## LUTHER SHERRILL et al. v. STATE.

No. A-7093. Opinion Filed April 5, 1930.
Rehearing Denied May 10, 1930.
(287 Pac. 747.)

Ross Rizley, R. B. Loofbourrow, and Orlando F. Sweet, for plaintiffs in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiffs in error, hereinafter called the defendants, were by information charged in the first count with rape in the first degree, and in the second count with rape in the second degree; were tried, and the jury returned a verdict of guilty, and fixed the punishment of each of the defendants at one year in the reformatory at Granite. Motion for new trial was filed, considered, and overruled, and the case is on appeal to this court.

The defendants demurred to the information on the ground, first, that the first count of said information fails to allege facts sufficient to charge said defendants with the crime of rape in any degree; and, second, that the second count of said information fails to allege facts sufficient to charge said defendants with the crime of rape in any degree.

The testimony on behalf of the state tends to show that the defendant Vernie Parmlee came to the home of the prosecutrix, Edith Priddy, on a Sunday evening for the purpose of taking her for a car ride; that the prosecuting witness had been keeping company with Parmlee for about a year; that he had been taking her to parties, church, and neighborhood gatherings; the prosecutrix also knew Luther Sherrill; that, before Parmlee went to the home of the prosecutrix, Sherrill got out of the car a short distance from the home, and waited for the prosecutrix and Parmlee to come and pick him up. Prior to going to the home of the prosecutrix, the defendants had gone to another home for the purpose of securing a girl, but the parents of the girl would not permit her to go with them. The testimony shows that on this occasion Sherrill went to the home, and Parmlee waited some distance from the house.

The testimony tends to show that, after the defendants got the prosecutrix in the car, they drove to various places, and late in the afternoon returned home and found there was no one at home; that the defendants and prosecutrix then left for the purpose of attending a religious service some distance away; after they had driven some distance from the home of the prosecuting witness, Sherrill purchased some whisky; the prosecuting witness denies she knew anything about the whisky until after it had been purchased, stating that:

"Luther drove into Mr. Whitmers' place and got the liquor; we then turned north to the Bunchgrass schoolhouse, and then went up to Johnie Carsons, and turned east to Bud Whitmers; we drove down to a canyon, and Luther and Vernie begin to drink the liquor, and then they forced me to take a drink—had me to. At that time they had taken three swallows and I taken one; they would hand it back and forth to each other; they began to swear,

and said it was awfully strong; the whisky was taking effect, and Vernie said he was going to be sick at his stomach, and Luther said he wanted to take another swallow; it was finally all drank; they begun to get kinda rough; I mean by getting kinda rough they began to talk smutty to me; he asked me if I would cohabit with him, and I told him I wasn't that kind of a girl; he says 'you will anyway'; I jumped out of the car, and went up to a little old bridge, and he caught me before I got across it; the bridge was south of the car, west quite a little ways; then he had Vern help him drag me to the car; they told me if I would go back to the car they would go on to church; but we did not go on to church; Luther then begun to take my bloomers off and I kicked and screamed and fought him and pinched him; Luther Sherrill and I were in the back seat and Vernie Parmlee was in the front seat; Luther Sherrill did not accomplish any act of intercourse with me until Vern helped him hold me; he was not able to overcome me my himself; Vernie Parmlee held my hands to my sides, Sherrill got between my legs, one hand around my waist, and got me in a position he could get on me; after Sherrill had penetrated me, Vernie Parmlee turned me loose, and Sherrill held my hands and Vernie got in the same position Sherrill was in, and Luther Sherrill kept telling me to be still; I tried to get away, and they finally pushed me down in the seat again, and Vernie got hold of me and had sexual intercourse with me; it was about a half mile from where this occurred to the closest house; this road where this occurred was just a road used by the community; that is, it was not a public highway; after they got through, they said we had better go back, and I told them I would tell my folks, that there would be something happen, and stated they would have to do something."

The testimony of the prosecutrix further shows that, after the whisky was secured by the defendant Sherrill, they continued to drive from place to place until they finally stopped on the road where the road crosses a canyon about a half mile from the nearest house.

The testimony further tends to show that the prosecutrix in this case was fourteen years of age, and under sixteen, and that the defendants were each under the age of eighteen years. Some days after the occurrence the prosecutrix advised her mother what had taken place, and a letter was written to Vernie Parmlee asking him to come, that something had to be done, tending to show that they thought the prosecutrix, as a result of the cohabitation, might be pregnant.

The testimony of the defendants tends to show that the prosecutrix had been going with different boys to parties and other places, that she drank as much of the whisky as the defendants did, and the defendants both admit they drove from place to place, and that they drove the car down in the canyon where the prosecutrix says they did. The defendant Luther Sherrill in his testimony attempts to show that, before they got to where they stopped the car, he had been fondling the prosecutrix, squeezing and loving her, and that he had made indecent proposals to her to permit him to have sexual intercourse, and she stated she would if he would prevent her from getting pregnant; that, when the car stopped, the defendant Parmlee was in the front seat of the car, and that he and the prosecutrix were in the rear seat, and that he there, with the consent of the prosecutrix, had intercourse with her; that the defendant Parmlee took a cushion out of the car, and put it on the ground, and the prosecutrix lay down on the cushion, and Parmlee cohabited with her, while the defendant Sherrill was sitting on the running board of the car smoking a cigarette. The defendant Sherrill attempts to say that, while they were in the act of cohabitation, the prosecutrix asked him to kiss her three different times. The defendants in their testimony attempt to show that the prosecutrix suggested they with-

draw from the act of cohabitation like some one else had been doing before the conclusion of the cohabitation; the defendants denying that the prosecutrix got out of the car and sought to get away as testified to by her, and that they forcibly returned her from the bridge mentioned by the prosecutrix; that they used no force in cohabiting with the prosecutrix, or that she made any objection whatever to the act of cohabitation with either of the defendants.

The defendants called several witnesses to establish their previous good character in the community where they lived, and by their testimony sought to reflect upon the previous character of the prosecutrix, and attempted to show that the prosecution in this case was the result of the failure of the prosecutrix and her mother to get money out of them. This is in substance the testimony. Fourteen errors are assigned by the defendants alleged to have been committed by the court in the trial of this case. The first error alleged is, said court erred in overruling the demurrer of the plaintiffs in error to the information. An information is sufficient which states facts clearly and distinctly in ordinary and concise language without repetition, and which informs the accused of the offense with which he is charged with such particularity as will enable him to prepare for trial, and so defines the identical offense so that the accused, if convicted or acquitted, will be able to defend himself in case he be indicted or informed against again for the same offense by pleading the record of said former conviction or acquittal. Scott v. State, 40 Okla. Cr. 296, 268 Pac. 312.

Defendants insist the court erred in overruling their motion for a directed verdict in favor of the defendants, when the state rested its case.

Section 1834, C. O. S. 1921, subd. 6, provides:

"Where she is prevented   *   *   *   by any intoxicating narcotic, or anesthetic agent, administered by or with the privity of the accused."

In this case the testimony of the defendants tends to show that the prosecutrix drank as much whisky as they did. If the defendants administered to the prosecutrix intoxicating liquor, and she was under the influence of the same, and by reason of such she submitted to the act of sexual intercourse, then the defendants cannot claim the benefit of the statute, as provided in section 1834, that resistance was not necessary and therefore consent could not be given legally.

To support a charge of rape, female's resistance need only to be such as to make nonconsent and actual resistance reasonably manifest, having regard for her age, strength, and surrounding circumstances. Bulls v. State, 33 Okla. Cr. 64, 241 Pac. 605.

What were the surrounding circumstances in this case? A fourteen year old girl, taken from her home by the defendants, and driven to a canyon on a country road a half mile or more from the nearest place occupied by any one, whisky administered to her, and then the defendants admit they each cohabited with her; they say she consented; she says she resisted, and that her resistance was overcome by the defendants. The jury heard the evidence, and by its verdict said it believed the state's evidence and convicted the defendants. We hold the evidence sufficient to warrant the court in submitting the case to the jury. Where there is any evidence apparently credible, which, if believed by the jury, is sufficient to sustain the judgment, this court will not reverse the case on the sole grounds of the insufficiency of the evidence. The demurrer to the evidence was properly overruled. Loudermilk v. State, 33 Okla. Cr. 146, 242 Pac. 1060.

The defendants next complain of the instructions of the court. A careful examination of the instructions, when taken together, shows that the court fairly and substantially declared the law applicable to the facts in this case.

The defendants complain of the action of the court when the jury was considering the case, when the jury was brought into court. The record has been examined, and we fail to find anything said or done by the court that could be construed as prejudicial to the defendants. The court's remarks seem to be clear and void of any appearance of prejudice or bias against the defendants.

Other errors are discussed by the court, but, after due consideration, it is found they do not possess sufficient merit to warrant a reversal of this case. In this case the defendants do not seem to be satisfied with their testimony to attempt to show that the prosecutrix voluntarily consented to the acts of cohabitation, but by other testimony they seek to show that her previous actions with men had not been above reproach, in that they offered testimony showing she had cohabited with other men. . This conduct on the part of the defendants is not the usual conduct indulged in by young men who can truthfully go on the witness stand and testify the cohabitation with the prosecutrix was voluntary. Very few young men desire to slander a young girl, even though they may believe she has committed acts of immorality. It is to be regretted that cases of this kind arise, yet the law must be upheld. The evidence in this case is sufficient to sustain the judgment. The defendants were accorded a fair and impartial trial. Finding no errors in the record sufficient to warrant this court in reversing this case, the judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.